Thomas B. Wolfe and Grace W. Wolfe, Husband and Wife, *v.* Redevelopment Authority of the City of Johnstown.

Argued October 20, 1970, before President Judge BOWMAN and Judges CRUMLSH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*Edward G. Kuyat, Jr.,* with him *Franke, Ayers, Hager, Kuyat and Walker,* for appellant.

*Samuel R. DiFrancesco, Jr.,* with him *Gleason, Gleason, Gleason, DiFrancesco and Shahade,* for appellee.

OPINION BY JUDGE KRAMER, January 25, 1971:

This matter involves the condemnation by the Redevelopment Authority of the City of Johnstown, appellant-condemnor (defendant below) under the Emient Domain Code, Act of June 22, 1964, P. L. 84, of certain realty owned by the appellees-condemnees, Thomas B. Wolfe and Grace W. Wolfe, his wife (plaintiffs below), who are Florida residents. The realty involved consists of two contiguous parcels purchased at different times in 1956 and 1957. Thereafter the two structures on the parcels were converted into 16 furnished apartments. This property was operated as an investment business and was purchased and developed by the appellees to produce income for their retirement years.

It was stipulated that the first declaration of the taking of the entire Market Street West project occurred on December 20, 1966. The formal declaration of taking of appellee's property was filed in the Court of Common Pleas of Cambria County, Pennsylvania, on June 6, 1968.

Viewers were appointed by the court on October 3, 1968, and hearings were held, after which the viewers' report was filed April 7, 1969, making an award of $27,675.00 to the appellees. An appeal from that determination was made by both parties to the Court of Common Pleas, and a jury trial was held, during which the Judge and jury viewed the premises.

Presented at the trial were three opinions on the fair market value of this property, one by the husband

appellee in the amount of $40,000.00, one by an expert called by the appellees (Charles N. Glass), in the amount of $32,000.00, and a third by an expert called by the appellant (Wallace E. Williams), in the amount of $22,000.00. The jury returned a verdict in favor of appellees in the amount of $37,500.00.

The appellant filed a motion for a new trial, and the court by order dated December 11, 1969, dismissed the appellant's motion.

The appellant filed this appeal on January 19, 1970, before the Supreme Court of Pennsylvania, under the appeal provisions of the Eminent Domain Code.

Under the provisions of The Commonwealth Court Act of January 6, 1970, P. L.    , this case was transferred to the Commonwealth Court for argument and final determination.

The appellant presents to the court two basic issues, the first being whether the court below erred in refusing the appellant-condemnor's motion to strike the testimony of the condemnee's expert witness; and secondly, whether the jury verdict was excessive and against the weight of the evidence.

The appellant argues that the condemnee's expert witness did not properly take into account the three permissible methods of valuation set forth in the Eminent Domain Code at section 705 (26 P.S. 1-705), and that he (Glass) included in the capitalization of income method some portion of the income derived from the use of personalty (furniture) in the furnished apartments. First, the record shows that Mr. Glass did consider the three methods suggested by the Code and others to determine the valuation of the property taken. The record clearly shows that he did not include personalty in his valuation, and that his opinion on Fair Market Value was based upon the highest or best use of the property, i.e., furnished apartments (26 P.S. 1-603).

Secondly, it is evident Mr. Glass discounted to some extent the rental income from this property in that under his formula on capitalization of income he used a 10 per cent rate which when applied to his finding of annual net income would have resulted in a valuation figure almost $3,000.00 higher than his final valuation opinion. This in effect made allowance for the income yield on the furniture.

The condemnor argues that it would be improper to include in the Fair Market Value of the property being taken some portion of that value based upon the income from the personalty not taken (in this case furniture in furnished apartments). We agree with this premise. For example, the income from the business of a merchant should not be included in the formula in the capitalization of income method used in arriving at the Fair Market Value of a store building. But if the business (or any use which may be the highest and best use) gives the property taken a special value, it is proper to include this factor in the valuation (26 P.S. 1-603).

Here the expert witness did include all of the income from the furnished apartments which he admitted was higher than the rents would have been if the apartments were unfurnished. However, he did not use the results of his capitalization of income formula as the sole basis in arriving at his opinion on the Fair Market Value because his valuation was less than it would have been under a strict application of his capitalization formula. It was proper not to strike Glass' testimony.

The condemnor had the right to cross-examine the expert (Glass) extensively on this point. The record fails to disclose anywhere that Glass restricted himself to this one method in his valuation. As a matter of fact the record is contrary to that thought.

The condemnor could have utilized its expert witness (Williams) to contradict Glass. The record fails to disclose what basis Williams used in his capitalization of income formula.

The third protection the condemnor had was the court's instruction to the jury, with available points and exceptions. The record discloses that the court's instructions were clear and proper.

Finally, since the jury viewed this condemned property it properly could have ignored the experts' testimony, if they believed them not to be credible, and could have based their verdict upon their own judgment following the court's instructions.

The record discloses that no objection was made to the testimony of Mr. Glass until after he had completed not only cross-examination but redirect and recross. The court was correct in its refusal to strike the testimony of Mr. Glass. The reasons given by the appellant at the time the motion was made were properly left to the discretion of the jury upon the explanation given by the court in its instructions. The appellant did not request specific instruction on this point. (See *Boring v. Metropolitan Edison Company,* 435 Pa. 513, 257 A. 2d 565 (1969).)

At the conclusion of the court's charge to the jury, the attorney for the appellant did make a specific request that the jury be instructed not to include the furniture in its determination of the value of the property. The court obliged and was very explicit in instructing the jury that the furniture was not to be ". . . a part of your consideration at all."

We note in passing that the expert witness of the appellant-condemnor offered noticeably less support or explanation for the basis upon which he determined the capitalization of income method in arriving at his valuation opinion.

The second issue raised by the appellant concerns the alleged excessiveness of the jury's verdict.

The law is clear that the jury may use all of the evidence presented to it in arriving at what it believes is the fair market value of the property taken. *Morrissey v. Com. Department of Highways*, 424 Pa. 87, 225 A. 2d 895 (1967); *Glider v. Commonwealth of Pennsylvania Department of Highways*, 435 Pa. 140, 255 A. 2d 542 (1969). In arriving at that determination, a jury is permitted to utilize not only the valuations testified to by the experts but also specifically is permitted to utilize that valuation which may be placed upon the property by the condemnee (26 P.S. 1-704).

The only valuation which is a part of this record which the jury did not have available to it was the viewers' award in the amount of $27,675.00. This of course was proper under the Code (26 P.S. 1-703(3)). See *Berger v. Public Parking Authority of Pittsburgh*, 380 Pa. 19, 109 A. 2d 709 (1954).

While the award of the Board of Viewers is an important fact to be considered when a new trial is requested either for the inadequacy or excessiveness of the jury's verdict, it is not controlling. *Chiorazzi v. Commonwealth*, 411 Pa. 397, 192 A. 2d 400; *Dague v. Commonwealth of Pennsylvania*, 418 Pa. 340, 211 A. 2d 527 (1965).

The jury verdict in the amount of $37,500.00 is 27 per cent higher than that awarded by the viewers, 15 per cent higher than the valuation of the condemnee's expert witness, 41 per cent higher than the condemnor's expert valuation, and 6 per cent less than the valuation placed upon this real estate by the condemnee.

Taking into account all of the valuations presented in this case we cannot hold that the jury's verdict was excessive or unreasonable.

"An appellate court will not interfere with the judgment of the lower court in a condemnation case, unless it believes that the verdict was so excessive or inadequate that the refusal of the court below to grant a new trial was a clear and manifest abuse of discretion, or was unconscionable and shocking to the appellate court's sense of justice." *Vaughan v. Commonwealth of Pennsylvania*, 407 Pa. 189, 180 A. 2d 12 (1962).

We are further impressed with the fact that the Judge and jury viewed this property as provided for in the Code, 26 P.S. 1-703. Therefore, the jury not only had the testimony of the condemnee and the two experts, but in addition had the advantage of its own view of the property in arriving at its verdict; and this factor must be given considerable weight by an appellate court. *Commonwealth v. 108.3 Acres of Land*, 431 Pa. 341, 246 A. 2d 124 (1968). We are satisfied that the jury's verdict was supported by the weight of the evidence and is not excessive.

Order affirmed.