## The Gentzel Corporation, Appellant, *v.* Borough of State College, Appellee.

Argued February 4, 1974, before Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. President Judge BOWMAN and Judge WILKINSON, JR., did not participate.

*Louis F. Floge,* with him *Schnader, Harrison, Segal & Lewis,* for appellant.

*Robert K. Kistler,* with him *Miller, Kistler, Campbell & Mitinger,* for appellee.

OPINION BY JUDGE KRAMER, April 18, 1974:

This is an appeal filed by The Gentzel Corporation (Gentzel) from an order of the Court of Common Pleas of Centre County, dated June 4, 1973, granting the motion of the Borough of State College (Borough) for a new trial. It is a condemnation case filed pursuant to the Eminent Domain Code (Code), Act of June 22, 1964, Sp. Sess., P. L. 84, art. 1, §101 et seq., 26 P.S. §1-101 et seq., and the motion for new trial followed a jury trial and verdict for condemnee, Gentzel, in the amount of $597,687.41.

On September 22, 1967, the Borough filed its formal Declaration of Taking wherein it described by metes and bounds certain property owned by Gentzel which the Borough desired to condemn and take in fee simple for the public purpose of expanding downtown automobile parking facilities in the Borough. The property involved is located in the center of the downtown business district and contains 36,860 square feet. It is bounded on the east by Pugh Street, on the north by Calder Alley, on the west by Humes Alley and on the south by a property line with adjoining property. Gentzel's sole business was the ownership, management and operation of the condemned property together with other commercial and multi-tenanted buildings

across Calder Alley and across Pugh Street. At the time of the taking, the condemned property had been improved by buildings used for various purposes. Some of these buildings were used as apartments and others were used for commercial purposes. The largest building on the condemned property contained a heating plant in its basement which was used to heat not only the buildings on the condemned property, but also the buildings on the neighboring Gentzel properties.

Preliminary objections contesting the validity of the taking were filed but these were dismissed ultimately by the Supreme Court of Pennsylvania at 433 Pa. 612, 248 A. 2d 766 (1969), in a per curiam opinion. A board of view was thereafter appointed by the lower court. The lower court directed the board of view to "consider not only the claims relating to the premises described in the declaration of taking" but to also consider "any offers of proof as to any other damages resulting therefrom if they should find such damages are compensible [sic] according to law." In a report dated September 29, 1971, the board found the just compensation for the taking of the Gentzel property to be $552,320.00. In addition, the board found damages for one of the tenants in the amount of $81,223.13, making a total of $633,543.13. The board also awarded Gentzel $3,365.00 for removal damages. In its report, the board noted that on June 12, 1969, the Borough had made a partial payment of $50,000.00 to the tenant and $375,000.00 to Gentzel. The Borough appealed to the court below from the award made by the board. Prior to the jury trial before the court below, the Borough, by stipulation and agreement, settled the case with the tenant via the payment of $25,000.00 in addition to the $50,000.00 previously paid. In the same stipulation, Gentzel agreed that the Borough would be credited a total of $75,000.00 against any award ultimately found in favor of Gentzel, and Gentzel and his

tenant agreed to share any detention damages. The jury trial then proceeded involving only the compensation due Gentzel for the property taken.

At the jury trial, Gentzel presented the testimony of its president who valued the property taken at $782,-359.20 based primarily upon one comparable sale in the area. Gentzel also presented the testimony of two highly qualified expert witnesses. One testified to a valuation of $674,000 based primarily upon comparable sales. He attributed a value of $549,000 to the land and buildings and a value of $125,000 to the heating plant. Gentzel's other expert witness testified to a valuation of $647,800 based upon a land and building value of $522,800 and the same heating plant value. Both of these experts agreed that they relied upon a third expert witness, named Nicholas, who restricted his evaluation to the heating plant itself. Nicholas, who was also highly qualified, described the heating plant in great detail and broke down his $125,000 valuation into several parts, assigning $78,750 to 250 feet of 4' x 4' crawl space tunnels located mostly under the condemned property. The tunnels traveled under the adjoining streets to Gentzel's other rental properties.

The Borough presented three witnesses, two of whom valued the condemned property at $381,000 and $365,000 respectively, without regard to the steam-heating plant or the tunnels. A third Borough witness testified solely to the heating plant and based upon an income study, valued it at $12,475. However, this witness never saw the plant whereas Nicholas had working knowledge of the plant.

It is important to note that neither the jury nor the judge of the court below were given the opportunity to view the property as it existed on the date of the taking for the reason that the Borough completely demolished all of the buildings and commenced construction of the new Borough parking facilities prior to

the trial. However, the jury was taken to the site and instructed to use their imagination, i.e., to view the photographs taken before the demolition and imagine their condition and location upon view of the new parking facility. At the end of the trial the jury returned a verdict of $597,687.41 in favor of Gentzel. The Borough then filed a motion for a new trial. Argument was held and the court below filed its opinion and order, from which this appeal was taken. In its opinion, while recognizing that all of the expert witnesses were properly qualified, the court below concluded: "We believe a new trial would be warranted in the interest of just [sic] because we think the amount of the verdict in the light of the weakness we find in the testimony on behalf of Gentzel was against the weight of the credible evidence." Secondly, the lower court declared that it had erred in permitting Gentzel to prove as an element of its damages the loss and destruction of the heating plant, including the tunnels and lines extending beyond the boundaries of the condemned property. The court stated that it believed that the Assembled Economic Unit Doctrine was not applicable for the reason that the heating plant was not used by Gentzel for "either industrial or commercial purposes." In its appeal to this Court, Gentzel argues that the court erred in granting a new trial on both grounds.

Our scope of review on the question of whether the lower court abused its discretion or committed an error of law in the granting or refusing of a new trial was ably discussed by Mr. Justice POMEROY in *Austin v. Ridge*, 435 Pa. 1, 255 A. 2d 123 (1969), where it is stated:

"The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this Court will review the action of the court

below and will reverse if it determines that it acted capriciously or palpably abused its discretion. Burd v. Pennsylvania Railroad Company, 401 Pa. 284, 164 A. 2d 324 (1960); Decker v. Kulesza, 369 Pa. 259, 85 A. 2d 413 (1952); Bellettiere v. Philadelphia, 367 Pa. 638, 81 A. 2d 857 (1951). This brings us to the central problem, viz., what freedom does the trial court have to review and set aside a jury verdict where the evidence presented to the jury is legally sufficient to sustain that verdict?"

. . . .

"Established doctrine in Pennsylvania dictates that a trial judge abuses his discretion when he grants a new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. Hummel v. Womeldorf, 426 Pa. 460, 464, 233 A. 2d 215 (1967). Where, however, the trial court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he is under a duty to grant a new trial. Pritchard v. Malatesta, 421 Pa. 11, 13, 218 A. 2d 753 (1966). Our rule may be simply stated; its content is more elusive; and its application will of course require a continuing exercise of judicial sensitivity. The burden of the approach outlined is to treat the legitimacy of the trial court's grant of a new trial as a function of the seriousness of the jury's departure from that result which the trial court feels is dictated by the evidence. Where the case is close and the evidence contradictory, the jury must perforce be given freer rein; but a new trial should be granted and will be upheld where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand."

. . . .

"In reviewing the grant or refusal of a new trial to determine whether there has been a palpable abuse of discretion, we must view all the evidence in the

record. See Noel v. Puckett, 427 Pa. 328, 235 A. 2d 380 (1967); Sherman v. Manufacturers Light & Heat Co., 389 Pa. 61, 68n, 132 A. 2d 255 (1957); and Denman v. Rhodes, 206 Pa. Superior Ct. 457 (1965)." 435 Pa. at 4-6, 255 A. 2d at 124-125. This Court has consistently followed these guidelines. *See Redevelopment Authority of the City of Philadelphia v. United Novelty & Premium Co., Inc.,* 11 Pa. Commonwealth Ct. 216, 314 A. 2d 553 (1973); *D'Alfonso v. Department of Transportation,* 5 Pa. Commonwealth Ct. 341, 291 A. 2d 117 (1972); *Felix v. Baldwin-Whitehall School District,* 5 Pa. Commonwealth Ct. 183, 289 A. 2d 788 (1972); and *Lewis v. Urban Redevelopment Authority of Pittsburgh,* 5 Pa. Commonwealth Ct. 176, 289 A. 2d 774 (1972).

We have carefully reviewed this entire record, including the lower court's statement that it was granting a new trial because it believed that the amount of the verdict was "against the weight of the credible evidence." We conclude that the court committed a manifest abuse of discretion. It is settled law in this Commonwealth that the determination of credibility is within the exclusive province of the jury. When the lower court granted a new trial because the verdict was against the weight of the credible evidence, it transgressed the bounds of the judicial function. *See Poulos v. Commonwealth,* 438 Pa. 442, 266 A. 2d 100 (1970); *McConn v. Commonwealth, Department of Highways,* 431 Pa. 574, 246 A. 2d 677 (1968); *Springer v. Allegheny County,* 401 Pa. 557, 165 A. 2d 383 (1960); and *Lewis, supra.*

With regard to the steam-heating plant which was contained on the condemned property, we refer first to Section 603 of the Code, 26 P.S. §1-603. There can be no question (as is certainly spelled out in the comment following Section 603) that Section 603 was intended

to enlarge the definition of fair market value. In Section 603 we find "fair market value" defined as:

"Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

"(1) The present use of the property and its value for such use.

"(2) The highest and best reasonably available use of the property and its value for such use.

"(3) The machinery, equipment and fixtures forming part of the real estate taken.

"(4) Other factors as to which evidence may be offered as provided by Article VII." In Section 605, 26 P.S. §1-605, we find: "Where all *or a part of several* contiguous tracts owned by one owner is condemned or a part of several non-contiguous tracts owned by one owner which are used together for a unified purpose is condemned, damages shall be assessed as if such tracts were one parcel." (Emphasis added.) Section 704, 26 P.S. §1-704 provides that the condemnee or an officer of a corporate condemnee, without further qualification, may testify as to just compensation. Section 705, 26 P.S. §1-705 provides that a qualified valuation expert may base his testimony on comparable market value, reproduction cost or capitalization basis. In this case, Gentzel's two expert witnesses admittedly relied upon Nicholas' report, which was restricted solely to the steam-heating plant. This Court has approved the practice of permitting an opinion expert to take into consideration a report from a qualified expert regarding the value of machinery and equipment taken in the condemnation. *See Tross v. Johnstown Redevelopment Authority*, 8 Pa. Commonwealth Ct. 605, 302 A. 2d 883 (1973), and *North Side Deposit Bank v. Urban Redevelopment Authority*, 1 Pa. Commonwealth Ct. 274, 274 A. 2d 215 (1971).

We agree entirely with the Borough's position that if the jury verdict included damages for the taking of tunnels under the public streets and under the adjoining lands owned by Gentzel, then the verdict would be improper. If Gentzel believed that its property beyond the condemned property lines was taken, it should have filed its own petition for the appointment of a board of view for such taking. This is not to say, however, that a condemnee is not entitled to damages naturally flowing to the condemnee as a direct result of the taking of any property by condemnor. We need not get into that issue, however, for the reason that we have carefully read the charge of the court below in this case and in at least twelve places in that charge the court instructed the jury to find damages as related to the condemned property only. There is not even a hint in the charge that the jury should consider any valuation for any property beyond the boundaries of the condemned property. No one contests the fact that the heating plant was a part of the condemned property or that the jury had to consider the fair market value of the plant in reaching its verdict. It is not possible from the record submitted to this Court for us to determine that this jury in fact awarded damages for the taking of property beyond the boundary lines of the condemned property. In its opinion, the court below is forced to assume that the jury became involved in the Assembled Economic Unit Doctrine. That assumption is not warranted because the court very carefully instructed the jury to restrict all of its verdict to the condemned property itself. We believe that the court's charge was proper in every respect and that it worked to the benefit of the Borough, rather than to the benefit of Gentzel.

In summary, we conclude that the court below committed a manifest abuse of discretion in passing upon the credibility of the evidence presented, and in

assuming that the jury had included in its verdict damages for property beyond the condemned property. Therefore we must reverse the order of the lower court granting a new trial.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I would affirm the granting of a new trial for the reasons set forth in the opinion of the lower court written by President Judge LIPEZ, Specially Presiding. *In Re: Condemnation of Premises in State College Borough by the Borough of State College for Parking Purposes,* 8 Centre County Law Journal 253 (1973).