## Broad Acres Construction, Inc. v. Zoning Hearing Board of North Coventry Township

*Lawrence Sager* and *Richard E. Wells*, for plaintiff.

*Timothy F. Hennessey*, for defendant.

GAWTHROP, *J.*, November 17, 1981—This matter has come before us upon the Appeal of Broad Acres Construction, Inc., (Broad Acres) from the decision of the Zoning Hearing Board of North Coventry Township (zoning hearing board) denying its application to reconstruct a lawful nonconforming use which was partially destroyed by fire. This opinion is written pursuant to Pa.R.A.P. 1925(a), Broad Acres having appealed our order sustaining the decision of the zoning hearing board and dismissing

the appeal. The primary issue is whether there is substantial evidence supporting the decision of the zoning hearing board.

## HISTORY

Appellant, Broad Acres Construction, Inc., owned an apartment complex, an admitted lawful nonconforming use, which was substantially damaged by fire. The North Coventry Township Zoning Officer denied Broad Acres' application to reconstruct the complex, having decided that more than 75 percent of the fair market value of the property had been destroyed by the fire, citing Article VIII, §803(D) of the North Coventry Township Zoning Ordinance.[1] Broad Acres appealed that decision to the Zoning Hearing Board of North Coventry Township. After seven public hearings on this matter, resulting in approximately 900 pages of transcribed testimony, and after viewing the subject premises, the zoning hearing board issued its findings of fact and decision which found, inter alia, that the complex had been depreciated by more than 75 percent of its fair market value, that Broad Acres was not entitled to a permit to reconstruct the complex, under Article VIII, Section 803(D) of the North Coventry Zoning

---

1. That section provides: Restoration. Any lawful nonconforming building or other structure which has been involuntarily damaged or destroyed by fire, explosion, windstorm, or other similar active cause, to an extent of not more than 75 percent of its fair market value immediately prior to destruction, may be reconstructed in the same location, PROVIDED that the reconstructed building or structure shall not exceed the height, area, or volume of the damaged or destroyed building or structure, except as provided in paragraph "B" of this Section, hereinabove, and reconstruction shall begin within one (1) year from the date of damage or destruction, and shall be carried on without interruption.

Ordinance, and it sustained the zoning officer's denial of Broad Acres' application to reconstruct.

Broad Acres appealed from the decision of the zoning hearing board to this court, and the matter was submitted on briefs, addressing the pleadings and the record below. In its brief, Broad Acres asserts essentially three arguments[2]: that the zoning hearing board abused discretion and legally erred, by (1) placing the burden of proof upon Broad Acres, (2) finding the value of the partially destroyed Broad Acres property to be $100,000, and (3) allegedly failing to consider, or failing to credit, the uncontradicted and unrebutted evidence presented by Broad Acres as to the cost to repair the damaged apartments.

## DISCUSSION

Since we took no independent testimony, our scope of review is limited to whether, on the record presented, the zoning hearing board abused its discretion, committed an error of law, or made findings not supported by substantial evidence: Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, Art. I, §10, 53 P.S. §11010; McCarron v. Zoning Hearing Board of Lansdale, 37 Pa. Commonwealth Ct. 309, 389 A. 2d 1227 (1978). "Substantial evidence" is "that evidence which a reasonable man acting reasonably might have utilized in reaching the decision made." Robin Corp. v. Board of Supervisors of Lower Paxton Township, 17 Pa. Commonwealth Ct. 386, 391, 332 A. 2d 841 (1975). As set forth below in our discussion of each of the three issues raised by Broad Acres, we find

2. Other issues which were raised by Broad Acres in its Notice of Appeal but were not briefed are waived: Com. v. Williams, 476 Pa. 557, 383 A. 2d 503, 510, fn. 11 (1978); Bell Telephone Co. of Pa. v. Mayerson, 14 D. & C. 3d 82, (1980).

that the zoning hearing board did not abuse its discretion, commit an error of law, or make findings unsupported by substantial evidence.

I. Burden of Proof and Burden of Going Forward.

At the start of the hearings on this matter before the zoning hearing board, the parties entered an agreement as to the order of proof.[3] Broad Acres alleges North Coventry Township (Township), failed to establish through the testimony of the zoning officer a prima facie case that the Broad Acres complex had been devalued by more than 75 percent. By requiring Broad Acres to go forward after the zoning officer's testimony, Broad Acres argues that the zoning hearing board impermissibly saddled it with the burden of proof which constitutes an abuse of discretion and error of law. We disagree, for three reasons: (1) The Township established a prima facie case that the complex had been devalued by more than 75 percent of its fair market value, shifting the burden to Broad Acres; (2) the parties expressly agreed to the order of proof; (3) the zoning hearing board is authorized by the Pennsylvania Municipalities Planning Code, 53 P.S. § 10906, to adopt procedures for conducting hearings.

The first witness at the hearing, as agreed by the parties, was the North Coventry Township zoning

---

3. The agreement was as follows:

That the township will proceed with the presenting of the zoning officer to present his testimony. And if the zoning officer presents a prima facie case with respect to the question, and the issue concerning the 75 percent of the fair market value issue, then the burden will shift to the appellant and the appellant will have to go forward with his evidence. And, of course, the township will have the right to present further evidence after the appellant rests with respect to the issue of fair market value per other witnesses and additional testimony.

officer (Officer). He testified that before Broad Acres applied for a building permit, he, at the request of the Township Board of Supervisors, inspected the burned complex with an assistant, who had been in the construction contracting business for some years. The assistant was able to judge "from a construction standpoint, reasonable costs of repairs," said the officer. After describing his inspection in detail, the officer testified as to the factors which led to his conclusion that the structure had been destroyed by 80 to 85 percent of its fair market value as a result of the fire, although he was unable to give a "dollars and cents" appraisal of the fair market value of the complex before and after the blaze. On the day Broad Acres applied for a building permit to reconstruct the complex, the officer denied the application, citing Section 803(D) of the Township Zoning Ordinance. See: footnote 1, supra. Broad Acres asserted that it was not required to go forward after this testimony, arguing that the township had failed to establish a prima facie case of the destruction of more than 75 percent of the fair market value of the building. This argument the zoning hearing board denied, not on the merits, but on the procedural determination that it lacked the power to rule on what it described as a demurrer to the evidence.

This testimony of the officer was sufficient to permit the zoning hearing board to find that the township had established a prima facie case. We recall that a "prima facie case is made out whenever the evidence is strong enough to justify, even though it does not compel, an inference which tends to establish a fact necessary to carry an allegation to the jury." Bross v. Varner, 159 Pa. Superior Ct. 495, 498, 49 A. 2d 880 (1946). Though the officer was unable to place a dollar value on the structure before and after the fire, his detailed testimony of

his inspection and the state of the building was sufficient to justify the inference that more than 75 percent of the fair market value of the building had indeed been lost in the blaze. He had inspected the property with an assistant knowledgeable in the construction business, found extensive damage throughout the complex, and discovered the structure did not conform to the Township Building Code. He concluded that the extent of the damage would require rebuilding the entire complex so that it complies with the Township Building Code. This justifies the inference and the officer's conclusion regarding the percentage decline in the fair market value of the building. A second basis upon which the board could rely in finding a prima facie case is the presumption that a public official discharges his duty or act required of him by law, here the grant or denial of an application for a building permit, in accord with his authority and the law: Simco Stores v. Redevelopment Authority of Phila., 455 Pa. 438, 444, 317 A. 2d 610 (1974).

The parties before the board agreed the burden of going forward would shift to Broad Acres if the township made a prima facie case through the testimony of the zoning officer. Counsel for Broad Acres is now attempting to vitiate this agreement by asserting the board improperly placed the burden of proof on Broad Acres by use of this procedure. Although there apparently is no case law directly on point, we agree with the position of Broad Acres that the township had the burden of proof before the board to show that more than 75 percent of the fair market value had been devalued by the fire. We find persuasive Broad Acres' argument that this is analogous to the situation where a township asserts abandonment of a nonconforming use. See: Miorelli v. Zoning Hearing Board of Hazelton, 30

Pa. Commonwealth Ct. 330, 337 A. 2d 1158, 1159 (1977); Baird v. Slippery Rock Zoning Board, 20 Pa. Commonwealth Ct. 236, 242, 340 A. 2d 904 (1975). Both situations involve valid nonconforming uses where the right to continue the use is brought into question. Valid nonconforming uses may generally be continued: 53 P.S. §10107(13.1) (13.2); Township Zoning Ordinance, Art. VIII, §803(A).[4] The township does not dispute that it bore the burden of proof before the board, but vigorously denies that the burden was shifted to Broad Acres. The agreement entered into before the board, by its words,[5] relates to the burden of going forward, not the ultimate burden of persuasion. Counsel for Broad Acres confuses these two concepts. The arguments made all relate to the shifting burden of going forward, not to whether the township carried its ultimate burden of persuasion.[6] Broad Acres is bound by its agreement to this procedure regarding the burden of going forward, a matter of strategy[7]: Com. ex rel. Bell v. Rundle, 420 Pa. 127, 130, 216 A. 2d 57 (1966); Stardust, Inc. v. Com. Liquor Control Board, 30 Pa. Commonwealth Ct. 569, 374 A. 2d 989, 990 (1977). The board had full authority to enter the agreement

---

4. Broad Acres did not argue that the township failed to carry its burden of proof before the zoning hearing board.

5. See footnote 3, supra.

6. As stated in Jenkins, Pennsylvania Trial Evidence Handbook, §1.1, p. 27 (1974), the technically correct usage of the phrase [burden of proof] refers to the burden of proving a fact placed on one party or the other by the pleadings; the burden of persuasion remains on that party throughout the trial. However, there is a shifting of the burden of going forward with the evidence: Zenner v. Goetz, 324 Pa. 432, 435-6, 188 A. 124 (1936).

7. Broad Acres does not address the effect of its agreement in its brief.

or independently to impose this procedure on Broad Acres, since it may determine the procedures used in its proceedings: 53 P.S. §10906.

## II. Value of the Property After the Fire.

Broad Acres argues that the board abused its discretion and legally erred in finding the after value of the complex to be $100,000, by not explaining and justifying its findings, and by failing properly to consider the evidence before it. Realizing that the board did not discuss its findings at great length, we nonetheless find the board's original and additional findings of fact and conclusions of law sufficient, since they are supported by substantial evidence. We find no manifest abuse of discretion nor error of law.

In pressing this issue, Broad Acres first argues that the board's valuation does not precisely coincide with that of any expert witness, which leads to the conclusion that the board disregarded the evidence, substituted its own opinion and hence, allegedly abused its discretion. The testimony before the zoning hearing board as to the property value was lengthy and divergent. Broad Acres' four expert witnesses, Messrs. Brumbach, Emery, Thompson, and Swinehart, testified that the fair market value of the property after the fire was $225,000, $306,798, $200,000 and $250,000 respectively. The township's two expert witnesses, Mr. Rowan and Mr. Hoffman, testified that the after value of the property was $58,000 and $60,000, respectively. The board found the fair market value of the property after the fire was $100,000.

In support of this argument, Broad Acres cites Com. v. Herold, 17 Pa. Commonwealth Ct. 148, 330 A. 2d 890 (1975). In Herold, the Commonwealth Court upheld a jury award of $13,000 in the con-

demnation proceedings where the expert appraisals in evidence were $40,000, $18,000, and $2,400. Similarly, in Wolfe v. Redevelopment Authority of Johnstown, 1 Pa. Commonwealth Ct. 172, 273 A. 2d 923 (1970), the Commonwealth Court upheld a jury verdict of $37,500 in a condemnation proceeding with expert opinions in evidence of $40,000, $32,000, and $22,000. The court in both Herold, supra, and Wolfe, supra, gave considerable weight to the fact that the jury viewed the premises before evaluating the property.[8] The law is clear that a jury which views the subject property in eminent domain proceedings may ignore the experts' testimony if found not to be credible, and may base its verdict upon its own judgment: Com. v. Herold, supra, 17 Pa. Commonwealth Ct. at 150; Morrissey v. Department of Highways, 427 Pa. 87, 92-93, 225 A. 2d 895, 898 (1967).

Here, the zoning hearing board, in the presence of the parties and counsel, viewed the partially-destroyed building, a procedure expressly permitted by Section 908(8) of the Municipalities Planning Code 53 P.S. §10908(8). As in Wolfe and Herold, that the board viewed the property in addition to having heard the testimony of the experts must be given great weight. Though the board's valuation did not approach those of the Broad Acres experts, it was higher than the valuation of the township's experts. It was the board's "responsibility to weigh the credibility of these witnesses in making its award." Com. v. Herold, supra, 17 Pa. Commonwealth Ct. at 150. Considering that the board's valu-

---

8. Recognizing these cases deal with condemnation actions rather than restoration of nonconforming structures, we nonetheless find the principles enunciated equally applicable here, since both types of proceedings concern the fair market value of the property.

ation was within the limits of the various opinions, we cannot find the board's failure to adopt one of the valuations of the experts to be an abuse of discretion or error of law. The board was free to weigh the credibility of the experts and had the advantage of its own view.[9]

Contending that the zoning hearing board's decision is arbitrary and that the board did not substantiate its findings nor explain its reasoning, Broad Acres cites Lando v. Springettsbury Twp. Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 312, 286 A. 2d 924 (1972). In Lando, supra, the Commonwealth Court stated:

Both Section 908(9) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805 (Act No. 247) Article IX, § 908, 53 P.S. § 10908(9), and case law require that the Board issue an opinion which sets forth the essential findings of fact and sufficient of the Board's reasoning to show that its action was reasoned rather than arbitrary.

The Zoning Board of Adjustment in Lando made no findings of fact, but merely asserted its naked conclusion.[10] Consequently, the Commonwealth

---

9. This analysis equally applies to the Broad Acres argument that the board could not rely on the valuation of the township's experts because they failed to consider reconstruction costs. This contention goes to the credibility of the experts, a question for the fact finder, the board. We note that the township's appraisers found the remaining structure to be valueless, which logically permits the exclusion of reconstruction costs from the appraisal.

10. The board there found:

The applicant has failed to meet the burden imposed upon him by law of producing evidence which shows that the literal enforcement of the Zoning Ordinance causes unnecessary hardship, of a substantial and compelling force, other than

Court could not perform its function of review, being unable to determine the basis for the board's decision.

Here, the zoning hearing board, unlike the board in Lando, set forth its essential findings of fact in its initial decision:

The fair market value of the apartment complex immediately prior to the fire and as unaffected by the fire was $415,000.

The fair market value of the property immediately after the fire and as affected by the fire was $100,000.

In response to an order of this court, the zoning hearing board submitted further findings putting forth the reasoning behind its valuation.[11] Read

---

economic, which is peculiar and unique to his property alone as distinguished from other properties in the district, or that the spirit of the ordinance would be observed and substantial justice done by granting the application, and the board, therefore, is prohibited by law from granting the application, and the same is, therefore, refused: Lando v. Springettsbury Twp. Zoning Board of Adjustment, supra, 4 Pa. Commonwealth Ct. at 316.

11. The entirety of the zoning hearing board's further findings reads as follows: The disparity in valuations given by expert witnesses for both the applicant and the township were such that the zoning hearing board, after consideration of all the evidence offered, had to resolve the issue of before and after valuation by assigning such values as they believed were indicated from a totality of the testimony given. Those values were arrived at prior to and independently of any percentage calculations, and were agreed upon by all members of the board.

Although it was the applicant's testimony that part of the existing structure had value, nevertheless the board determined the remaining structure was so damaged that it was not suitable for reconstruction purposes, and would have presented a clear and present danger to the health, safety and welfare of the community had the remains of the structure been utilized in the reconstruction process.

The value of the remains was given consideration, however,

together, the findings provide sufficient demonstration of the board's reasoning for review, meeting the requirements of Lando and the Municipalities Planning Code, 53 P.S. §10908(9). The findings compute destruction in excess of 75 percent of the structure's fair market value immediately before the fire.[12]

The board's stated reason for its finding of after value is that it concluded the complex "was not suitable for reconstruction," though it did find the structure had some residual value. In light of the conflicting testimony on this point, the board could properly find credible that expert testimony indicating the complex could not be reconstructed, though the building had some residual value.

### III. Cost of Repair.

Broad Acres' remaining argument is an eviden-

in arriving at comparable before and after figures. If it had not been, then the comparable land value alone which would have been $60,000, would have made the percentage even greater, i.e., 85.5 percent depreciated as a result of the fire. The remains of the structure alone was thus valued at $40,000.

While the board used monetary figures to buttress its findings, it was the unanimous decision of the board, based on testimony and its view of the remaining structure, that the remaining structure could not be used for reconstruction purposes.

12. Broad Acres contends that because the board's figures compute to a percentage of value just barely over the necessary 75 percent, this requires the board to substantiate its findings by discussion of the expert testimony. This argument is based on a false premise. The additional findings of fact state that the valuation contained in finding of fact six includes the value of the land and that of the complex, with the complex valued at $40,000. Appellants' calculation is incorrectly based upon the $100,000 valuation of the entire property, instead of the $40,000 valuation of the complex. Use of the correct figures reveals that the complex has actually been devalued by approximately ninety percent of its original fair market value.

tiary one that the board abused its discretion and legally erred by failing to consider the uncontradicted and unrebutted evidence presented by Broad Acres regarding the cost to repair the apartment structure. For the reasons set forth below, we find this unpersuasive.

This argument is based on the fallacious premise that the evidence Broad Acres presented regarding repair costs was unrebutted. The evidence of the cost to repair the structure was primarily that of the President of Broad Acres, Mr. Swinehart. The only detailed estimate of reconstruction costs introduced by Broad Acres was that of Mr. Swinehart, which totaled $232,000. This testimony of cost of repair was rebutted by the township's experts. Mr. Rowan testified the cost to reproduce the units would be from $15,000 to $20,000 per unit, while the cost to reconstruct the units would be 150 percent of the cost of new construction. Assuming Broad Acres was simply going to replace the sixteen units in the northern section which were completely destroyed, this would yield a repair cost of $360,000.[13] Mr. Rowan testified it would be cheaper completely to rebuild the structure than to attempt to repair it. Mr. Hoffman, the township's other expert appraiser stated he knew the approximate cost of reconstruction from Beck manuals and from the estimates of local contractors. It was his opinion that nearly the entire structure would have to be rebuilt.

Mr. Swinehart's estimate was based on the assumption that it would not be necessary to tear down the north part of the east wall of the structure, and that one layer of dry wall would suffice to meet the fire regulations of the Pennsylvania Department of Labor and Industry ("L. and I."). These two

---

13. (16 units × $15,000) × 150% = $360,000.

factors were at issue before the board. Broad Acres presented two engineers who testified that the walls of the building were structurally sound. They based their opinions on the results of a Windsor probe test, and one of the engineers relied upon his visual inspection. An engineer testifying on behalf of the township stated that he would not certify, on the basis of the Windsor probe test, that the northern part of the east wall was structurally sound, since there were two "voids," and a low reading in the same area. As to the western wall, the township's experts saw that it was out of plumb, while one of Broad Acres' experts said that the walls were plumb, relying on a transit test which he had conducted. The zoning officer testified that a transit test of the west wall showed that it was out of plumb by three and five-sixteenths inches at the top of the wall, and two and one-quarter inches in the middle. This, testified the township's engineer, exceeds the permissible tolerances for load-bearing concrete masonry, as established by the National Concrete Masonry Association, criteria which are recognized in an appendix to the Township Building Code.

Mr. Swinehart testified that he believed that one layer of three-quarter inch dry wall on each side of a partition would meet the fire regulations of L. and I. However, a supervising inspector for L. and I. testified that the fire regulations had recently been amended to require two hours of fire resistance in party walls. This amendment, which would apply to the Broad Acres structure as rebuilt, would generally require two layers of dry wall on each side of a party wall to meet the two-hour fire resistant standard. Mr. Swinehart admitted he had not considered the cost of putting two layers of dry wall between party walls in his estimate of the cost to repair the structure.

It was the board's function to weigh the conflicting testimony, and it could properly find that there was doubt as to the structural integrity of the existing walls, which in turn cast doubt upon the accuracy of Mr. Swinehart's estimate: Com. v. Herold, supra, 17 Pa. Commonwealth Ct. at 150. All of Broad Acres' arguments on this issue revolve around the weight to be attributed to the testimony of various experts, which was conflicting.[14] It is asking this court to usurp the function of the zoning hearing board, which we will not do. We cannot accept Broad Acres' assertion that Di Bello v. Zoning Hearing Board of Adjustment, 4 Pa. Commonwealth Ct. 546, 287 A. 2d 56 (1972), is applicable here. In that case, there was no evidence offered to the board to oppose that of the applicant, and on that basis the Commonwealth Court found that it was an abuse of discretion for the board to ignore the uncontradicted evidence offered by the applicant: Di Bello, 4 Pa.

14. There were additional points of contention regarding the adequacy of Mr. Swinehart's estimate, such as whether it included the proper materials for construction of joists as required by the Township Building Code. Broad Acres argues that the cost of repair, an element in determining the cost to reproduce the structure, should have been considered by the board because the reproduction cost method is the only proper appraisal method for determining the after value of the structure. The two alternative methods are the market data and income approaches. Broad Acres argues that these may not be used, although all of its own experts testified that they had used one or both of these methods to determine the after value of the structure. Mr. Swinehart, the source of the only detailed estimate of the cost of repairs before the board, did not use the reproduction cost approach. One of Broad Acres' experts, Mr. Thompson, testified that the reproduction cost approach is the least reliable of the three methods. The board was free to reject the reproduction cost method in light of the conflicting testimony of these experts: Com. v. Herold, supra, 17 Pa. Commonwealth Ct. at 150.

Commonwealth Ct. at 549. Here, the township produced ample evidence rebutting that of Broad Acres and, again, the zoning hearing board had the benefit of a view of the property, enabling it to ignore the testimony of any expert it found to be incredible: Wolfe v. Redevelopment Auth. of the City of Johnstown, supra, 1 Pa. Commonwealth Ct. at 177, 273 A. 2d at 926.

For the foregoing reasons, we entered our order.