Sukala, et ux. *v.* Redevelopment Authority.

Argued October 31, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*David McNeil Olds,* with him *Roger C. Wiegand* and *Reed, Smith, Shaw & McClay,* for appellants.

*Aaron M. Kress,* with him *Thomas J. Dempsey* and *Luke and Dempsey,* for appellee.

OPINION BY JUDGE WILKINSON, December 1, 1972:

Appellants seek a new trial in a case to recover damages for a condemnation of their land and building by appellee. The core of the dispute is whether the land, building and equipment, last used six and one-half years before the condemnation, qualified appellants for compensation under the Assembled Economic Unit Doctrine.

The condemned property was a two and one-half story building, a substantial portion of which was designed or converted to be used as a bakery with built-in hearth ovens, a freight elevator, a cold-storage locker, and the usual mixing, processing and packaging machinery necessary for the operation of a bakery. The land, building and equipment had been purchased by appellants in 1961 and the bakery operated by the daughter of the former owner a very short time thereafter, perhaps one or two weeks. Thereafter the bakery stood idle until the declaration of taking on February 23, 1968.

The lower court, over the objection of appellee, admitted testimony on which the court charged the jury that it could find that the Assembled Economic Unit Doctrine applied and if found to be applicable, award damages for the machinery. The jury's verdict was: ". . . you find the above plaintiff is entitled to $17,000 for the land, $50,500 for the building, machinery to go to the owner; so say you all."

Neither party disputes the amount of the damages for the land or the building. Appellants seek a new trial in a second effort to recover damages for the machinery.

This Court in the last two years has had occasion to file three opinions dealing with the Assembled Economic Unit Doctrine. *Redevelopment Authority v. Yee Kai Teung,* 5 Pa. Commonwealth Ct. 65, 289 A. 2d 498 (1972); *Pittsburgh National Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 248, 274 A. 2d 567 (1971); *North Side Deposit Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 274, 274 A. 2d 215 (1971). These opinions, together with those of Justice EAGEN in *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970) and *Gottus v. Allegheny County Redevelopment Authority,* 425 Pa. 584, 229 A. 2d 869 (1967) make it unnecessary to here set forth the general nature of the Assembled Economic Unit Doctrine, or its development in Pennsylvania. We may proceed at once to dispose of the relatively narrow but important questions raised in this case.

Appellants argue that the lower court erred in submitting to the jury the question of whether the Assembled Economic Unit Doctrine applied. Appellants would have the court rule that as a matter of law, the Doctrine is applicable here. If the question of whether the Doctrine is applicable is a matter of law, then surely when the unit is a bakery that has not functioned for six and one-half years, as a matter of law, the Doctrine does not apply. Since the jury has come to this conclusion on these facts, no matter which way the question would be resolved, we must affirm the lower court.

Next, appellants argue that the lower court's charge did not adequately inform the jury with regard to the tests to apply in determining whether the Assembled

Economic Unit Doctrine should apply. Suffice it to say that appellants did not take exception to the inadequacy of the charge, did not submit a point for charge covering this matter, and did not take a general exception. Under all the testimony, we cannot hold that the charge was so inadequate as to constitute such fundamental error that justice would require a new trial without exceptions having been taken.

Finally, appellants argue that the unusual wording of the verdict showed that the jury did not understand what it was doing. Quite the contrary is clear from an examination of the record. Prior to rendering its verdict, the jury sent a written question: "Judge Riel, Your Honor, can we come to an agreement on land and building without mach(inery) and give mach(inery) and fixtures to Mr. Sequala (Sukala)?" The court asked trial counsel whether they agreed the jury could decide the question either way. Trial counsel for appellants replied: "It would be alright if you said, 'yes—either way.'" The record showed that when the verdict was returned, the following transpired:

"The Court: Anybody want the jury polled?

"Mr. Green: No, Your Honor.

"Mr. Bonidy: No.

"The Court: I think the jury has determined that the machinery by the verdict which is a question of fact which I charged them to that, the machinery was not a part of the real estate; is that right?

"The Jury: Right.

"The Court: You want the machinery to be returned to Mr. and Mrs. Sukala. You are giving him and his wife damages for the building and the land, is that right?

"The Jury: Yes.

"The Court: Any of the attorneys want to put anything on the record about the machinery or equipment at this stage in the proceedings?

"Mr. Green: No, Your Honor.

"Mr. Bonidy: No, Your Honor."

It is hard to imagine a circumstance in which the court could have given trial counsel for the appellants any more opportunity to determine whether the jury was confused.

Affirmed.