Faith United Presbyterian Church *v.*
Redevelopment Authority.

Argued November 3, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three. Petition for reargument denied. Per Curiam, February 3, 1973.

*Frank A. Conte,* for appellant.

*Gaylord W. Greenlee,* with him *Greenlee, Richman, Derrico & Posa,* for appellee.

Opinion by Judge Blatt, December 21, 1972:

This is an appeal from a decision of the Court of Common Pleas of Washington County refusing a motion for a new trial. The action was begun on June 10, 1971 when a Declaration of Taking was filed by the Redevelopment Authority of Washington County (Authority) pursuant to §402 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, as amended, 26 P.S. §1-402, taking a two-story brick church building owned by the Faith United Presbyterian Church (Church). A Board of View was appointed, and it subsequently awarded the Church damages in the sum of $88,500.00. Both the Authority and the Church appealed this award to the lower court, which held a jury trial. The jury returned a verdict of $152,000.00 and the Authority filed a motion for a new trial, which was denied by the lower court en banc.

During the course of the trial, each side presented two witnesses to testify regarding valuation. John Grable (Grable), an officer of the Church, testified for the Church initially that the property had a value of $400,000.00. Upon objection, the court had this figure stricken, and Grable thereafter testified that by taking

depreciation into account he would come up with a value of $250,000.00. The Church also presented Julian Fine (Fine) as an expert witness, and he testified that the value of the property immediately prior to taking was $210,000.00. Fine based this figure on the reproduction cost less depreciation because, in his opinion, there were insufficient sales of churches in the neighborhood to justify the use of comparables. The Authority's expert witnesses, Herschel Fetherlin (Fetherlin) and Malcolm Morgan (Morgan) used the comparable market value approach to ascertaining value, and they found the fair market value of the property to be $52,000.00 and $51,000.00 respectively.

Our scope of review is limited, of course, in any appeal from a denial of a motion for a new trial. "A motion for a new trial is addressed to the discretion of the trial court based on the circumstances of the particular case and the court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law." *Felix v. Baldwin-Whitehall School District,* 5 Pa. Commonwealth Ct. 183, 185, 289 A. 2d 788, 789 (1972). A heavy burden, therefore, rests upon the appellant in such an appeal as this, and, although the Authority has attempted to point out a number of errors allegedly committed by the court below, we must find that it has failed to carry its burden.

The Authority contends that it was improper for Grable to testify because he had not testified before the Board of View and because no notice of his appearance was given as required by §703(2) of the Eminent Domain Code, 26 P.S. §1-703(2).[1] It is also contended that the testimony he gave was incompetent.

_____

[1] "If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property be-

As to the propriety of Grable's testifying, it is true that there was a failure to comply with §703(2), but such compliance by the owner of the property condemned is made unnecessary by §704 of the Eminent Domain Code, 26 P.S. §1-704, which states: "The condemnee or any officer of a corporate condemnee, without further qualification, may testify as to just compensation, without compliance with the provisions of section 703(2)." This section is merely a codification of the law as stated in cases such as *Hencken v. Bethlehem Municipal Water Authority,* 364 Pa. 408, 72 A. 2d 264 (1950). There is no reason why Grable, as a high ranking officer of the Church, should not qualify as an "owner" to which the provisions of §704 can apply.

As to Grable's competence to testify, he estimated just compensation basically by considering reproduction costs less depreciation. Although the Authority contends that this was improper, the Supreme Court has held that "an owner of condemned property may now testify to reproduction costs, if such were an element in arriving at his estimate of value." *Hoffman v. Commonwealth,* 422 Pa. 144, 152, 221 A. 2d 315, 320 (1966). But, although Grable was competent to testify as to value, "he is subject to the current rules and occupies no special position as a witness." *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 414, 158 A. 2d 541, 545 (1960). There is no evidence, however, that Grable's testimony was given any preference by the court below over that of any other witnesses in the case. Admittedly, the basis for Grable's testimony might have been questionable, but that was a question for the jury.

fore and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof remaining after the condemnation, on the opposing party at least ten days before the commencement of the trial."

"(T)he jury may use all of the evidence presented to it in arriving at what it believes is the fair market value of the property taken. . . . In arriving at that determination, a jury is permitted to utilize not only the valuations testified to by the experts but also specifically is permitted to utilize that valuation which may be placed upon the property by the condemnee." *Wolfe v. Redevelopment Authority of the City of Johnstown,* 1 Pa. Commonwealth Ct. 172, 178, 273 A. 2d 923, 926 (1971).

The Authority next contends that Fine's estimate of value was incompetent because it was based on reproduction costs. The standards as to evidence provide otherwise, however, and are contained in §705 of the Eminent Domain Code, 26 P.S. §1-705, which states in part:

"Whether at the hearing before the viewers, or at the trial in court on appeal:

"(1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal.

"(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, *reproduction cost* or capitalization basis, which testimony may include but shall not be limited to the following:

"(i) The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation.

"(ii) The rent reserved and other terms of any lease of the condemned property or comparable property

which was in effect within a reasonable time before or after the date of condemnation.

"(iii) The capitalization of the net rental or reasonable net rental value of the condemned property, including reasonable net rental values customarily determined by a percentage or other measurable portion of gross sales or gross income of a business which may reasonably be conducted on the premises, as distinguished from the capitalized value of the income or profits attributable to any business conducted thereon.

"(iv) The value of the land together with the cost of replacing or reproducing the existing improvements thereon less depreciation or obsolescence.

"(v) The cost of adjustments and alterations to any remaining property made necessary or reasonably required by the condemnation." (Emphasis supplied.) The Comment on this section prepared by the Joint State Government Commission states that: "The reproduction approach is another basic approach to valuing property. If an expert has used such method in a particular case, evidence thereof should be allowed together with any explanation. This approach to value will be particularly helpful in valuing special use properties, such as churches, which have no normal market price."

It was Fine's opinion that there were insufficient comparable sales of churches in the area to permit ascertaining market value by reference thereto. He chose, therefore, to ascertain market value on the basis of reproduction costs, as permitted by §705. The fact that Fetherlin and Morgan were of a contrary opinion and did believe that there were sufficient comparable sales of churches in the area on which to base their estimates of value does not render Fine's evidence incompetent. It merely established a question of credibility, which again was solely within the discretion of the jury to

determine. It is "the province of the jury to weigh the credibility of the valuation witnesses' testimony and to determine what the land taken was fairly worth at the time of the condemnation." *Lewis v. Urban Redevelopment Authority of Pittsburgh*, 5 Pa. Commonwealth Ct. 176, 182, 289 A. 2d 774, 777 (1972).

The Authority has advanced still other reasons for objecting to various other rulings of the trial judge, all of which we have examined carefully but none of which we can consider as meritorious. It objects, for example, that the figure of $400,000.00, which was testified to by Grable but stricken from the record, was nevertheless constantly repeated thereafter, to the prejudice of the Authority. The figure was repeated at least twice, once by Grable during questioning initiated by counsel for the Authority and once by the trial judge during his charge. While the court may possibly have erred in repeating the figure during its charge, it did so in the context of explaining what Grable's original testimony was, and the court pointed out to the jury that Grable had changed his position and that his final figure was $250,000.00. The court's mentioning the $400,000.00 estimate, therefore, was at most harmless error.

The Authority also alleges that the court erred in not permitting testimony by Fetherlin on the reproduction cost approach of ascertaining market value. But the record makes clear that Fetherlin had given "no great amount" of consideration to the cost approach in ascertaining the value of the Church's property. It was certainly not improper, therefore, for the court to refuse to permit him to testify as an expert on the subject.

The Authority argues, in addition, that the lower court should have permitted it to enter photographs into evidence which showed comparable properties, and it makes an excellent argument on this point. It was

pointedly noted, however, in *Reeder Condemnation*, 45 D. & C. 2d 543, 548 (1968), that: "Complaint is made . . . that we refused to admit pictures of properties referred to by the witnesses as comparable sales. . . . Such evidence would be clearly irrelevant. While the Eminent Domain Code, section 705(2)(i), authorizes a qualified valuation expert to testify as to comparable property sales he used in arriving at his estimate of damages, this does not open up the case for the introduction of evidence for the jury to determine the fair market value of *other* property before and after condemnation. If we did this we would also have to go into all of the other factors which went into a determination of the sale price of the comparable to say nothing of the circumstances surrounding the pictures offered in evidence. This we do not think the law intended." (Emphasis supplied.) Photographs of comparables were involved in *Reeder*, as they are here, and it would not seem, therefore, that the lower court erred in this case by following *Reeder* and refusing to admit them.

The Authority likewise contends that the lower court erred in refusing to accept the jury's failure to reach a verdict after four hours of deliberating, claiming that such action was improper and served to force the jury to reach an unjust verdict. Again, we cannot agree. Refusing to accept a hung jury after only four hours of deliberation is hardly an abuse of discretion, especially in view of the fact that counsel for the Authority failed to make any objection at the time.

The Authority has gone on to cite what it contends are errors in the charge to the jury. As we have previously held, however, "The correctness and adequacy of a court's charge to a jury must be determined by a consideration of the entire charge and not just excerpts therefrom." *Felix v. Baldwin-Whitehall School Dis-*

*trict, supra,* 5 Pa. Commonwealth Ct. at 187, 289 A. 2d at 790. And a close examination of the charge by the court below discloses no prejudicial errors, and no basis, therefore, for granting a new trial.

Lastly, the Authority contends that this verdict was against the weight of the evidence and excessive.

As to the weight of the evidence, "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A. 2d 516, 518 (1970). In this case sufficient evidence was certainly presented to support the jury's verdict, and both sides offered testimony by competent experts. It was up to the jury, therefore, to determine which statements were the more credible and which side offered the weightier evidence.

As to the possible excessiveness of the verdict, it is true that the jury's verdict was approximately 70% greater than the award of the Board of Viewers. It is also true that a large difference between a Board of Viewers award and a jury verdict is a factor to consider when a new trial is requested. This is not a controlling factor, however, absent other evidence that the verdict is excessive. *Boring v. Metropolitan Edison Company,* 435 Pa. 513, 257 A. 2d 565 (1969); *Shotts v. Pennsylvania Turnpike Commission,* 431 Pa. 83, 243 A. 2d 326 (1968); *Redevelopment Authority v. Yee Kai Teung,* 5 Pa. Commonwealth Ct. 65, 289 A. 2d 498 (1972). There is here no other such evidence.

We must affirm the order of the court below and deny the Authority's motion for a new trial.