First Christian Church of Turtle Creek, Appellant, *v.* Redevelopment Authority of Allegheny County, Pennsylvania, Appellee.

Argued May 9, 1974, before Judges KRAMER, MEN-CER and ROGERS, sitting as a panel of three.

*James M. Arensberg*, with him *Tucker, Arensberg & Ferguson*, for appellant.

*P. Ronald Cooper*, with him *William J. Fahey*, for appellee.

OPINION BY JUDGE KRAMER, August 13, 1974:

This is an appeal by the First Christian Church of Turtle Creek (Church) from an order of the Court of Common Pleas of Allegheny County, dated July 3, 1973, denying a motion for a new trial.

On January 20, 1971, the Redevelopment Authority of Allegheny County (Authority) filed a Declaration of Taking whereby it condemned certain property in the Borough of Turtle Creek which was owned by the Church. A Board of Viewers (Board) was appointed and a hearing was held on September 21, 1972. At the hearing before the Board, Messrs. William R. Jones and Leo B. Shapero (Shapero) were called as witnesses for the Church, and Mr. Clyde R. Watford (Wat-

ford) testified for the Authority. On October 16, 1972, the Board filed its report which awarded compensation to the Church in the amount of $87,000.00.

On November 9, 1972, the Church filed an appeal from the Board's award. During the jury trial, held in April of 1973, the Church presented two valuation expert witnesses, Shapero and Daniel C. Smith, Jr. (Smith). The Authority presented one valuation expert witness, Watford. Prior to the trial, the Church served notice on the Authority that Smith would be testifying. Section 703(2) of the Eminent Domain Code (Code), Act of June 22, 1964, Sp. Sess., P. L. 84, *as amended,* 26 P.S. §1-703(2) required that the Church notify the Authority because Smith had not testified at the proceedings before the Board.

Due to the unique use of the property, i.e., as a church, each of the experts utilized the valuation approach based on the value of the land plus the cost of reproducing the improvements, less depreciation. This approach is specifically permitted under Section 705 of the Code, 26 P.S. §1-705(2)(iv). Watford, the Authority's expert, testified to a reproduction cost of $146,000.00, depreciation of 56% or $82,000.00, land value of $4,200.00 and a fair market value of $68,200.00.

In an effort to rebut Watford's testimony, the Church called William Neihaus (Neihaus), a contractor who specialized in building churches, to testify as to the reproduction cost of the church building. The trial court refused to permit Neihaus to testify as to a total reproduction cost figure or a specific per cubic foot figure. Neihaus, however, was permitted to testify that Watford's figure of 95 cents per cubic foot was not a reasonable statement of the reproduction cost. Neihaus would have testified that the reproduction cost of the church would be $186,000.00, and that the reproduction cost per square foot would be about $26.00. The basis for the trial court's refusal to permit the

12

Neihaus testimony was the Church's failure to notify the Authority that Neihaus would be called as a witness, pursuant to Section 703(2) of the Code, 26 P.S. §1-703(2).

The jury awarded a verdict in the amount of $85,-000 and the Church filed a motion for a new trial, which was heard before the court en banc. The motion was denied by an order dated July 3, 1973 and hence this appeal. On appeal, the Church argues that it should be granted a new trial because of the lower court's refusal to permit Neihaus to testify to a specific reproduction cost.

In cases such as this, our scope of review is limited to determining whether the lower court's grant or refusal of a motion for a new trial constitutes a manifest abuse of discretion or a clear error of law. *See Faith United Presbyterian Church v. Redevelopment Authority*, 7 Pa. Commonwealth Ct. 490, 298 A. 2d 614 (1972).

Relying on Section 705(1) of the Code, 26 P.S. §1-705(1), the Church contends that Neihaus' proffered testimony would have been proper rebuttal testimony concerning facts and data used by Watford. Section 705(1) of the Code provides: "Whether at the hearing before the viewers, or at the trial in court on appeal: (1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, *and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal.*" (Emphasis added.) The Church also contends that Neihaus is not, and need not be, a valuation expert in order to testify in rebuttal with respect to reproduction costs, and therefore the Authority was not entitled to prior notice pursuant to Section 703(2) of the Code.

The Authority challenges the Church's contentions on several grounds: (1) that the reproduction costs given by Watford were opinions, not facts and data; (2) that Section 705(2) permits only owners and qualified valuation experts to testify with respect to reproduction costs; (3) that testimony regarding reproduction costs can only be given if the witness speaks to the value of the property in question before and after condemnation; and (4) that Section 703(2) of the Code, 26 P.S. §1-703(2), requires that an opposing party be given prior notice when a valuation expert who did not appear before the Board is to testify at trial.

In addressing the issue of whether Watford's reproduction figures represent facts and data (as contemplated by Section 705, 26 P.S. §1-705) or opinion testimony, it is important to note that the subject language in Section 705 was intended to broaden the existing law in an effort to allow a more realistic evaluation of a valuation expert witness' competence or lack thereof. *See* Subdivision (1) of the Comment of the Joint State Government Commission 1964 Report (Comment) to Section 705 of the Code, 26 P.S. §1-705. While our research has not unearthed any appellate decisions directly on point, two cases dealing with the admissibility of a valuation expert's testimony would appear to lend support to the proposition that Watford's reproduction figures could be the subject of specific rebuttal testimony.

In *Pittsburg Outdoor Advertising Corporation Appeal*, 440 Pa. 321, 272 A. 2d 163 (1970), the Court held that it was permissible for a valuation expert to rely on the report of a qualified engineering firm in determining the value of billboards based on reproduction cost, less depreciation. The Court went on to note that valuation experts frequently must rely on facts and figures derived from others and that the components of an expert's testimony go to the weight

of the testimony, rather than its admissibility. In another case involving the admissibility of a valuation expert's testimony, *North Side Deposit Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 274, 279, 274 A. 2d 215, 217 (1971), we noted that: "If the expert considered certain breakdowns of the total valuation in arriving at his opinion, it would seem that these breakdowns would qualify as 'facts and data' and thus be admissible." We believe that the logical extension of the principle espoused in these two cases encompasses the use of rebuttal and impeachment testimony with respect to such components or elements relied on by a valuation expert.

It is also noteworthy that in the one lower court case that we found on point, *Ciolli v. Comth. of Penna. Dept. of Highways,* 116 P.L.J. 372 (1968), an architect was permitted to testify in rebuttal with respect to reproduction cost even though his testimony was properly rejected in the case in chief because the architect was not a qualified valuation expert.

This brings us to the Authority's second and third challenges. The Authority argues that Section 705(2)(iv) of the Code, 26 P.S. §1-705(2)(iv), only permits an owner or qualified valuation expert to testify with respect to reproduction costs, and only if the testimony includes an allowance for depreciation and land value. Section 705(2)(iv) of the Code, 26 P.S. §1-705(2)(iv), provides:

"(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, *reproduction cost* or capitalization bases, which testimony may include but shall not be limited to the following:

. . . .

"(iv) The value of the land together with the cost of replacing or reproducing the existing improvements

thereon less depreciation or obsolescence." (Emphasis added.)

As the court in *Ciolli, supra,* noted, Section 705 of the Code is intended to broaden the scope of testimony permitted by valuation experts, rather than to limit rebuttal testimony by individuals who are not valuation experts. The Section does not speak to testimony given in rebuttal by an individual who is not a valuation expert, and as such does not prohibit rebuttal testimony by such an individual which goes solely to reproduction costs as opposed to a complete estimate of property value. *See* Snitzer, *Pennsylvania Eminent Domain,* §705(1)-1.1. We are of the opinion that if the broadening effect of Section 705 is to have any influence on the scope of rebuttal testimony, it must be deemed to have concommittantly widened the permissible latitude of rebuttal testimony. Although Neihaus is obviously an expert, he is not a valuation expert. His proffered testimony does not deal with depreciation, land value, or fair market value; it would merely rebut one element of Watfords' valuation theory. We hasten to add that in making this determination we do not intend to imply that a valuation expert can use the reproduction cost approach to determine the value of a given property without taking depreciation into account.

The Authority's final challenge is based on Section 703(2) of the Code, 26 P.S. §1-703(2), which provides: "(2) If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property before and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof remaining after the condemnation, on the opposing party at least ten days before the commencement of the trial." The Authority quite properly notes that Section 703(2) is intended to eliminate

the surprise element found in cases when one expert is used before the Board and another, with a different valuation of the property, is used at trial. *See* Subdivision (2) of the Comment to Section 703(2) of the Code, 26 P.S. §1-703(2). It is also not in dispute that the Church did not notify the Authority prior to trial that Neihaus would testify. However, in light of our discussion above, it becomes apparent that Section 703(2) is not applicable because Neihaus is not a valuation expert. His proffered testimony does not include a statement of property value before or after condemnation. The nature of Neihaus' testimony as a rebuttal witness is delineated by the scope of the direct testimony in question, thereby eliminating the surprise element.

In conclusion, the lower court committed an error of law, and we therefore

ORDER

AND NOW, this 13th day of August, 1974, it is ordered that the order of the Court of Common Pleas of Allegheny County, dated July 3, 1973, denying the Motion for a New Trial filed by the First Christian Church of Turtle Creek is hereby set aside and the motion is hereby granted, and the matter is remanded for a new trial consistent with this opinion.