In Re: Condemnation by the Redevelopment Authority of the City of Harrisburg of Certain Parcels of Real Estate in the Third Ward of Said City in Connection with the Harristown Project, Project R-597.

Redevelopment Authority of the City of Harrisburg, Appellant *v.* Young Women's Christian Association, Appellee.

Argued June 4, 1979, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*David A. Wion,* with him *Reynolds, Bihl and Schaffner,* for appellant.

*Henry E. Harner,* with him *George W. McKee,* for appellee.

OPINION BY JUDGE ROGERS, July 17, 1979:

The Redevelopment Authority of the City of Harrisburg (Authority) has appealed a judgment on a jury's verdict in an eminent domain case entered against it in the Court of Common Pleas of Dauphin County. We affirm.

The Authority condemned the property of the Greater Harrisburg Area Young Women's Christian Association by filing a Declaration of Taking pursuant to the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S.

§1-101 et seq. A board of viewers was appointed and filed a report assessing damages at $992,000. The YWCA appealed this decision to the Court of Common Pleas where, after a jury trial, verdict against the Authority in the amount of $1,320,000 was rendered and judgment thereon entered.

The Authority contends that the trial judge erroneously admitted allegedly hearsay testimony of an officer of the appellee-YWCA concerning the construction cost of five YWCAs built in other parts of the county; and further that he improperly admitted the evidence of YWCA valuation experts, one purporting to value machinery and equipment only and the other real estate only, each of which appraisals in fact included items also in the other.

Section 704 of the Code, 26 P.S. §1-704, provides that a "condemnee or an officer of a corporate condemnee, without further qualification, may testify as to just compensation. . . ." Section 705, 26 P.S. §1-705, permits a qualified valuation expert, "on direct or cross-examination, [to] state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof. . . ." The Pennsylvania Supreme Court has held that the term qualified valuation expert as used in Section 705 includes the condemnee:

> It may be argued that a distinction should be made between the owner and an expert because the latter is more likely to possess the knowledge necessary for testimony in such matters as 'reproduction costs' Our courts, however, have left any such distinction in qualifications up to the jury.

*Hoffman v. Commonwealth*, 422 Pa. 144, 151, 221 A. 2d 315, 319 (1966). The Authority correctly observes, however, that neither an expert witness nor a condemnee may testify to facts and data which are not

judicially relevant and competent. *Scavo v. Department of Highways*, 439 Pa. 233, 266 A.2d 759 (1970).

During the trial, the Authority's counsel objected to questions asked of the vice-president of the appellee YWCA which would elicit her opinion of the fair market value of the property condemned, on the ground that no relevant facts or data upon which her opinion was based had been first offered. After a side bar discussion, the trial judge overruled the objection upon an understanding that the witness would testify concerning facts and data upon which she based her opinion before giving an opinion of the value of the condemned property. The witness then testified that she had examined reports which gave construction costs and other information about YWCA buildings constructed within five years, located, respectively, in Iowa, New York, Florida, Connecticut and Minnesota. She then testified as to the date of completion, the kind and size, the total and per square foot cost, and other matter descriptive of each of the buildings. The Authority's counsel objected to this testimony on the ground that the witness was not qualified to interpret the data referred to and because in so doing she relied on hearsay. The objections were correctly overruled. As to the first, we note that a condemnee may testify as to value without supporting facts and data. *Gallo v. Redevelopment Authority of Sharon*, 19 Pa. Commonwealth Ct. 71, 339 A.2d 165 (1975). Here the YWCA's officer-witness's attempt to give only her opinion of value was met with the condemnor's objection to the absence of supporting facts and data. It was no abuse of discretion on the part of the trial judge to permit her to describe the things supporting her opinion in specific response to the condemnor's ill-founded objection to the absence of such support. We also agree with the court below that the testimony of the YWCA's officer, if partially

based on hearsay, was nevertheless competent.. In *Pittsburgh Outdoor Advertising Corp. Appeal*, 440 Pa. 321, 272 A.2d 163 (1970), the Pennsylvania Supreme Court held that the testimony of a valuation expert was not rendered incompetent by his reliance on a written appraisal prepared by a qualified engineering firm. The court reasoned:

> The use by a testifying valuation expert of facts and figures derived from others and of which he himself does not have personal knowledge occurs frequently and is not a new development. To require direct personal knowledge by the expert witness of every element going to make up an appraisal figure would be to require the impossible. That there may thus be some hearsay evidence comprised within opinion evidence is undeniable. The components of an expert's opinion, however, go to weight, not admissibility.

*Id.* at 327, 272 at 166. Since the officer of a corporate condemnee may testify as to value just as a valuation expert, the YWCA's officer could testify concerning cost figures contained in reports upon which she based her opinion. As the Supreme Court wrote in *Hoffman, supra*:

> The purpose of the pertinent sections of the code is to bring out before the jury the elements which a witness is using in valuing the condemned property, and thus aid the jury in properly ascertaining the true facts, and in assessing the witness's testimony as to. valuation. To hold otherwise would mean that the owner of the property could state only the valuation he put on his property without being permitted to demonstrate to the jury the elements he considered in reaching his valuation. A qualified expert, on the other hand, could show the elements

he considered in reaching his valuation. Such a rule would be markedly unfair, because the jury could easily imply that the owner's valuation was a mere guess. 422 Pa. at 151-52, 221 A.2d at 319-20.

The appellant first challenged the appraisal technique employed by condemnee's valuation experts in its motion for a new trial. The parties agreed and the jury was instructed that the Assembled Economic Unit Doctrine applied, and therefore that all machinery, equipment and fixtures were to be considered part of the real estate in computing just compensation. Two valuation witnesses testified for the condemnee—Dr. Seymour Stein who first appraised the machinery and equipment and Mr. Arnold Saft who then appraised the real estate, using reproduction cost. The appellant says that some items in Dr. Stein's machinery and equipment appraisal, such as suspended ceilings, ceiling and wall tile, ornamental woodwork and metal duct work, were also included in Mr. Saft's estimate of reproduction cost of the building. After carefully reviewing the testimony of both experts, we have concluded that no such impropriety was committed. In *Redevelopment Authority of Erie v. Pulakos*, 17 Pa. Commonwealth Ct. 251, 330 A.2d 869 (1975), we held the trial judge did not err by allowing testimony concerning the reproduction cost of various components of a building specially designed for the manufacture and sale of candy and related products when "part of the building is so unique that common sense dictates that a real estate appraiser would be forced to seek out expert advice and information to assist him in arriving at a proper unit valuation for the entire property condemned. . . ." *Id.* at 265, 330 A.2d at 878. Before either began his appraisal, Dr. Stein and Mr. Saft inspected the YWCA building and decided which items each would include

in his respective report. The purpose of this arrangement was to prevent duplication. Dr. Stein and four associates then made detailed floor plans of the seven floors and basement, listed and identified all items of machinery and equipment including features unique to the building's use as a YWCA and decorative features, and depreciated the replacement cost of each item to arrive finally at a fair market value for machinery and equipment of $302,141. Mr. Saft in consultation with an architect estimated the cost of constructing the building without the specialty items valued by Dr. Stein, by developing unit rates applicable to the area of each floor. After a second meeting between the two appraisers to check for duplication, Dr. Stein further adjusted his machinery and equipment report. Mr. Saft then added the value of the land and the structure to Dr. Stein's estimate for machinery and equipment to form an opinion of fair market value of the assembled economic unit in the amount of $1,647,900.

The case was well and fairly tried by the parties and the trial judge, as the jury's verdict about midway of the parties' expert valuation evidence may suggest.

Judgment affirmed.

### ORDER

AND Now, this 17th day of July, 1979, judgment affirmed.